FILED

May 31 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0547

DA 15-0547

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 132N

DAVID RATHS,

      Plaintiff and Appellant,

   v.

FIRST INTERSTATE BANK
OF BILLINGS,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DV 14-1046
                 Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Thomas Malee, Attorney at Law, Billings, Montana

      For Appellee:

         Gerry Fagan, Brandon JT Hoskins, Moulton Bellingham PC, Billings,
         Montana

Submitted on Briefs: May 4, 2016

Decided: May 31, 2016

Filed:

                                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 David Raths appeals an Order of the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to First Interstate Bank of Billings (First Interstate) on Raths' claim that First Interstate mismanaged income-producing trust property, of which Raths was a beneficiary. We address: (1) whether Raths established fraud; and (2) whether the District Court erred in granting summary judgment to First Interstate. We affirm.

¶3 In November 1976, Nicholas Raths executed a trust-creating will, naming his wife, Marie, and three sons—including Raths—as beneficiaries. The Trust included a 6,300-acre ranch. Marie was granted sole ownership during her lifetime of 43.55% of the estate. The remainder of the estate—56.45%—was jointly entrusted to Marie and First Interstate. The Trust came into existence upon Nicholas' death in 1988, after which Marie continued to live on the ranch and primarily controlled decisions concerning the ranch's operations and management. First Interstate, as co-trustee, managed the Trust's investment funds. Cynthia Reierson, First Interstate's Trust Officer, managed First Interstate's interest in the Trust from 1999 until it terminated upon Marie's death in 2011.

2

First Interstate then distributed a one-third share of the Trust to each of the remaining beneficiaries: Raths and his two brothers.

¶4 In April 2013, Raths met with Reierson and Angela Kennedy to discuss his final distributions from the Trust. During the meeting, Reierson read him a "Receipt of Distribution and Acknowledgement" (Receipt).[1] Relevant to this proceeding, the Receipt provided: "I agree that the distributions that I have received represent a final distribution of the amounts to which I am entitled from the [Trust]." The Receipt further provided: "I have read this Receipt of Distribution carefully, had the opportunity to discuss it with my attorney, and I understand the contents of this document. I sign this document willingly." After reading the Receipt, Reierson asked Raths if he had any questions; he responded that he did not. Raths then signed the Receipt. He made no objections to the Receipt or to First Interstate's management of the Trust during the meeting.

¶5 In 2014, Raths filed suit against First Interstate for breach of a trust agreement, breach of fiduciary duty, and punitive damages. Raths alleged that First Interstate mismanaged the Trust so that he did not receive the full potential distribution. First Interstate moved for summary judgment on all of Raths' claims. On August 21, 2015, the District Court issued an Order granting First Interstate's motion. The Court determined that Raths' signing of the Receipt ratified any alleged mismanagement of trust property by First Interstate, "thereby estopping [Raths'] claims of mismanagement," and that Raths had not established a prima facie claim for fraud. Raths appealed.

---

[1] Raths is legally blind.

3

¶6     We review summary judgment orders de novo. *Bailey v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 119, ¶ 18, 370 Mont. 73, 300 P.3d 1149.   Summary judgment is appropriate when the moving party demonstrates an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.   M. R. Civ. P. 56(c)(3). Once the movant has accomplished this, the burden shifts to the non-moving party to "provide material and substantial evidence setting forth specific facts to raise a genuine issue of material fact."   *Simms v. Schabacker*, 2014 MT 328, ¶ 13, 377 Mont. 278, 339 P.3d 832.   In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in the non-movant's favor.   *Thornton v. Flathead Cnty.*, 2009 MT 367, ¶ 13, 353 Mont. 252, 220 P.3d 395.

¶7     Trustees have a duty to trust beneficiaries to administer trusts prudently "by considering the purposes, terms, distributional requirements, and other circumstances of the trust."   Section 72-38-804, MCA.   Trustees also have a duty to keep beneficiaries reasonably informed regarding the administration of the trust and material facts necessary to protect their interests.   Section 72-38-813(1), MCA.   However:

> A trustee is not liable to a beneficiary for breach of trust if the beneficiary consented to the conduct constituting the breach, released the trustee from liability for the breach, or ratified the transaction constituting the breach unless:
> (1) the consent, release, or ratification of the beneficiary was induced by improper conduct of the trustee; or
> (2) at the time of the consent, release, or ratification, the beneficiary did not know of the beneficiary's rights or of the material facts relating to the breach.

4

Section 72-38-1009, MCA. Raths does not dispute that he ratified First Interstate's management of trust property. In his responses to First Interstate's discovery requests, Raths acknowledged that he signed the Receipt and stated, "I understood what I was signing." However, Raths contends that First Interstate fraudulently concealed material facts relating to its alleged breach of trust, making his ratification invalid. Specifically, Raths contends that First Interstate failed to prudently manage the Trust and implied that it achieved the maximum income potential of the ranch throughout the years by inaccurately representing to Raths he was getting everything to which he was entitled. The District Court rejected Raths' allegations, finding that he failed to establish a prima facie case of fraud.

¶8 A prima facie case of fraud requires the alleging party to establish the following elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance upon its truth; (8) the right of the hearer to rely upon it; and (9) the hearer's consequent and proximate injury or damage. *Sprunk v. First Bank W. Mont. Missoula*, 228 Mont. 168, 173-74, 741 P.2d 766, 769 (1987). In his response to First Interstate's motion for summary judgment, Raths listed twenty-five facts allegedly supporting his argument that First Interstate misled him. However, Raths did not connect any of these facts to any of the elements of fraud. His general averment to § 28-2-405, MCA, which lists actions constituting actual fraud in a contract, and blanket statements that "actual Fraud is always a question of fact" and "[t]here is

5

abundant evidence of fraud in the record" are insufficient to draw this connection. The District Court did not err in finding that Raths failed to establish a prima facie case of fraud.

¶9 The District Court also noted that Raths was aware of all material facts regarding First Interstate's management of the ranch before he signed the Receipt. Raths largely relies on a 2012 appraisal of the ranch, commissioned by First Interstate, to support his contention that the ranch could have been making a higher profit. This appraisal was not part of the record below; therefore, we will not consider the contents of the appraisal on appeal. *See Groves v. Clark*, 1999 MT 117, ¶ 22, 294 Mont. 417, 982 P.2d 446 ("[T]he parties on appeal are bound by the record and may not add additional matters in briefs or appendices."). More to the point, Raths acknowledges that, before signing the Receipt, he was given the appraisal and several years of Trust tax returns and statements. In fact, as the District Court noted in its Order: "The very information upon which [Raths] decided that the ranch should have generated more income was readily provided by [First Interstate]." If First Interstate was attempting to defraud Raths, the provision of this information would seem to be, at a minimum, counterproductive to its efforts. Moreover, the District Court found that, during the twenty-three years that Marie managed the ranch, Raths did not question her competence.

¶10 The District Court did not err in finding that, before signing the Receipt, Raths had all of the information upon which he now relies for his contention that the ranch should have generated more income. Raths ratified the transaction in which he received his final distribution and has not shown that he was induced by improper conduct on First

6

Interstate's part or that he was unaware of his rights and the material facts underlying his allegations of a breach when he signed the Receipt. *See* § 72-38-1009, MCA. The District Court properly granted summary judgment to First Interstate. Because the District Court did not err in dismissing the case on First Interstate's motion for summary judgment, we need not address whether the District Court should have partially granted Raths' motion for summary judgment.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct, and its findings of fact are not clearly erroneous. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ MICHAEL E WHEAT